In re Thomas F. CASEY, Debtor.

**ARTIFICIAL INTELLIGENCE CORP., Steven Sanford, Steven Greenberg & Catherine Casey, Plaintiffs,**

v.

**Thomas F. CASEY, Defendant.**

**Bankruptcy No. 95–03747–B11.**

**Adv. Nos. 95–90451–B11 to 95–90453–B11.**

United States Bankruptcy Court, S.D. California.

March 1, 1996.

John W. Cutchin and Thomas R. Darton, Duckor, Spradling & Metzger, San Diego, CA, for Plaintiffs.

Russell M. De Phillips and Roy L. Carlson, Jr., Milberg & De Phillips, Cardiff by the Sea, CA, for Defendant.

## AMENDED MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

Thomas F. Casey ("Debtor") brings this Motion to Dismiss several related adversary proceedings on the basis that they were not timely served as required by Federal Rule of Civil Procedure ("FRCP") 4(j), as made applicable to bankruptcy proceedings in its 1990 version by Rule 7004, Federal Rules of Bankruptcy Procedure. This Rule requires the service of adversary complaints within 120 days of filing. The debtor contends that the present complaints for non-dischargeability were served almost 150 days after they were filed and that no good cause exists which warrants relief from the timeliness requirement of Rule 7004.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General

Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The pertinent facts of these cases are not in dispute. The present adversary proceedings seek the non-dischargeability of claims pursuant to §§ 523(a)(2), (4), (5) & (6). These claims concern debtor's alleged conduct which led to a Superior Court judgment against the debtor totaling over $11,000,000. This judgment is currently on appeal. Due to this judgment, debtor filed under Chapter 11 on April 14, 1995. Subsequently, the Court sent out its Notice of Commencement of the case which stated, inter alia, that July 18, 1995 was the bar date to file certain non-dischargeability actions. The plaintiffs' group ("Plaintiffs") timely filed the subject adversary proceedings on July 18, 1995. They did not, however, serve the complaints upon the debtor until December 15, 1995, almost 150 days after they were filed.

The debtor asserts that there were no obstacles to prevent plaintiffs from effectuating proper service. On October 2, 1995, plaintiffs filed a motion to dismiss, convert or appoint a chapter 11 trustee in the underlying bankruptcy case. Debtor claims that plaintiffs did not reference the adversary complaints or request an extension of the time to serve the complaint pending determination of the motion to dismiss. The debtor claims that plaintiffs can show no good cause for failing to timely serve the complaints and that plaintiffs could have easily served the complaint and stipulated to an extension of the response time.

Finally, the debtor claims that plaintiff may not re-file these complaints because they are subject to Rule 4007(c), Federal Rules of Bankruptcy Procedure. Therefore, debtor requests that these complaints be dismissed with prejudice.

Plaintiffs attribute their late service to their belief that success was likely on the motion to dismiss. Such dismissal would have rendered these complaints moot. A hearing on the motion to dismiss took place on October 30, 1995, within the 120–day service period. Because some of the Court's findings were critical of the debtor, plaintiffs assert that they continued to have confidence in the success of their motion to dismiss.

On November 16, 1995, the 120th day after filing the complaints, the Court held hearings on the motions to dismiss the related Audre bankruptcy cases.[1] The Court denied the motions to dismiss those cases, but did not rule on the motion to dismiss the debtor's bankruptcy which had previously been taken under submission. After no ruling was made on the motion to dismiss for another month, the plaintiffs claim that they became concerned that further delay of service of the complaint might not be reasonable and service was effectuated on the debtor on December 15, 1995.

The plaintiffs assert that there was good cause for the delay in service because they did not want to provide debtor a vehicle with which to re-litigate the Superior Court judgment. Also, they believed that waiting for a ruling on the motion to dismiss would save unnecessary costs. Although plaintiffs admit that it was fully within their power to timely serve, plaintiffs believe that these reasons constitute good cause for failure to comply with Rule 7004.

The plaintiffs also claim that good cause exists to waive the Rule 7004 time limit because the debtor suffered no prejudice by the delay in service and had full notice that the complaints were filed. Additionally, dismissing the complaint would cause substantial hardship to the plaintiffs because the 60–day period to object to dischargeability has run. This would prevent the plaintiffs from objecting to the dischargeability of these substantial claims.

Plaintiffs' final assertion is that an extension of time to serve the complaints should be granted under the excusable neglect standard of Rule 9006(b)(1). This issue is the subject of separately filed motions and will be addressed at an upcoming hearing. Therefore, whether this Court should extend the time for filing due to an excusable ne-

---

1. Prior to these bankruptcies, Mr. Casey was the major shareholder and President of Audre, Inc.

and Audre Recognition Systems, Inc.

glect analysis pursuant to Rule 9006(b)(1) is not addressed at this time.

## DISCUSSION

The present motion to dismiss is based upon Rule 7004. As noted, Bankruptcy Rule 7004 makes Rule 4(j), Federal Rules of Civil Procedure, applicable to adversary proceedings in its January 1, 1990 form. At that time, the rule provided that if a complaint was not served within 120 days after filing, it shall be dismissed unless the party responsible for service can show good cause for its failure to complete service.

█ The Federal Rules of Civil Procedure were amended in 1993 and former FRCP 4(j) is now designated as FRCP 4(m). The 1993 amendment made the rule discretionary in nature, allowing a judge to excuse the 120-day requirement even if the party responsible for service could not establish good cause for its failure. However, Rule 7004 is clear that Bankruptcy Courts are bound by the language of the Rule as written on January 1, 1990. Rule 7004(g) states that the controlling subdivisions of FRCP 4 are those in effect on January 1, 1990, notwithstanding any amendment to the Rule thereafter.

While the 1993 amendment does not apply to bankruptcy courts, the plaintiffs direct this Court to a recent BAP ruling which stated that Bankruptcy Courts may look to cases decided under the amendment for guidance in determining good cause. *In re Waldner,* 183 B.R. 879, 881 (9th Cir. BAP1995). The plaintiffs assert that the Advisory Notes to the amendment suggest that a court may allow late service if the statute of limitations would bar the re-filed action or if the defendant has evaded service or has concealed a defect in attempted service.

The debtor acknowledges that *Waldner* suggests that a court may look to the new amendments to the former FRCP 4(j), now FRCP 4(m), for guidance on good cause. The Advisory Notes list three examples where a court may grant relief from the 120-day service requirement, including whether the action would be barred by the statute of limitations and whether the defendant evaded service. The debtor points out, however, that the court in *Waldner* dismissed the case despite some evidence of evasion of service,

and that no evidence of evasion exists in this case.

Plaintiffs are incorrect in attempting to read the Advisory Notes to state that an inability to re-file is an example of good cause. The Notes provide guidance for the court's exercise of its newly granted discretion to allow service beyond the 120-day period, without regard to the good cause requirement. The Notes discuss possible circumstances in which the Court may grant relief from the 120-day period despite a lack of good cause. Specifically, the Advisory Committee Notes for the 1993 amendments to Rule 4, Federal Rules of Civil Procedure, provide as to the new Rule 4(m):

> This subdivision retains much of the language of the present subdivision (j).
>
> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown. Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service. (Citations omitted.) A specific instance of good cause is set forth in paragraph (3) of this rule, which provides for extensions if necessary to correct oversights in compliance with the requirements of multiple service in actions against the United States or its officers, agencies, and corporations....

Such discretion is not permitted under the 1990 version of FRCP 4(j), as applied in Rule 7004. If good cause is not established, Rule 7004 of the Bankruptcy Rules of Federal Procedure dictates that the complaint shall be dismissed.

It is clear that under former FRCP 4(j) as made applicable by Rule 7004, the plaintiffs may only be excused from a failure to comply with the service requirement upon a showing of good cause. The question is whether the plaintiffs have presented any facts for failing to timely serve that constitute good cause.

Good cause was not defined under former FRCP 4(j) and courts must exercise their discretion in determining whether good cause has been demonstrated. *Waldner*, 183 B.R. at 881. The debtor claims that the only example of good cause for failure to timely serve cited by former FRCP 4(j)'s Advisory Notes is an evasion of service by the defendant. *Wei v. State of Hawaii*, 763 F.2d 370, 371 (9th Cir.1985). Further, as stated above, the BAP has recently dismissed a case although there was some evidence of evasion of service because the court found that the plaintiff easily could have served debtor by first class mail and could not adequately explain the failure to do so. *Waldner*, 183 B.R. at 881.

■ The party responsible for service, here the plaintiffs, have the burden of demonstrating good cause. *In re Anderson*, 179 B.R. 401, 405 (Bankr.D.Conn.1995). Debtor cites to an abundance of case law buttressing its position that plaintiffs' conduct does not reach the level of good cause required by former FRCP 4(j). Plaintiffs list two explanations for their delinquency and ask this Court to find that they constitute good cause. Plaintiffs, however, present no compelling authority for their position that either of these circumstances constitute good cause under former FRCP 4(j).

■ First, plaintiffs assert that they both filed their Motion to Dismiss and attended a hearing on that motion within 120 days of filing the complaints. This fact is irrelevant to the issue at hand and plaintiffs direct this Court to no case law that supports the proposition that filing a motion to dismiss the underlying bankruptcy case has any effect on the 120–day service requirement of Rule 7004. A filing or hearing on a motion to dismiss does not toll the timely service requirement. The filing of the motion and the hearing do not aid the plaintiffs' case for establishing good cause. Rather, they indicate that the plaintiffs had ample opportunity to address the service issue prior to the 120–day limit. Plaintiffs could easily have asked for an extension of time in the motion or at the hearing when the matter was taken under submission.

■ The plaintiffs say that they based their tardy service upon their assumption that they would prevail on the motion to dismiss. A mistaken assumption or mere inadvertence does not establish good cause. *In re Reeves*, 127 B.R. 866, 868 (S.D.Cal. 1991); *Whale v. United States*, 792 F.2d 951, 953 (9th Cir.1986). Indeed, plaintiffs acknowledge in their pleadings that there was no inadvertence in their decision to not make service.

Plaintiffs assert that they were trying to avoid unnecessary costs because these complaints would become moot if the bankruptcy was dismissed. Avoiding costs has been rejected as good cause for failure to serve in connection with an attempt to save costs pending settlement negotiations. *In re Southold Development Corp.*, 148 B.R. 726 (E.D.N.Y.1992). *Southold* held that an attempt to save money did not constitute good cause even under the more flexible due diligence standard applied to FRCP 4(j) before it was changed to its 1990 form. *Id.*, at 730. Avoiding unnecessary costs is an important concern. However, plaintiffs could have taken other steps, such as a stipulated extension of time.

■ Second, the plaintiffs state that their delay in service was intended to prevent the debtor from arguing that plaintiffs, by filing the adversary proceedings, had submitted the issues to this Court's jurisdiction and that the bankruptcy court was the proper place to resolve the non-final issues previously litigated in state court. Indeed, plaintiffs have acknowledged both in their pleadings and at oral argument that this was the real reason they chose to withhold service. Debtor had already amply demonstrated its intent and desire to relitigate all the state court issues by the claims adjudication process, motions to avoid liens or by adversary proceedings. Plaintiffs believed, quite reasonably, that debtor would argue in opposition to the motion to dismiss the underlying bankruptcy case that plaintiffs had put the central issues before this court by filing the adversary complaints. The fact is, however, that plaintiffs did timely file the adversary complaints, and it is particularly ironic that they asked to be excused from non-service of the complaints precisely because they wanted to

keep the timely filing a secret from debtor and, presumably, the Court.

But even if plaintiffs' argument were somehow supportable, that their desire to avoid giving debtor an additional argument to oppose the motion to dismiss was the reason for non-service, their rationale terminated on or about August 10, 1995. Plaintiffs assert that debtor knew of the adversary complaints at least as early as August 10, 1995 because debtor filed on that date a written Status Conference Statement reflecting that information. As noted, the adversary complaints were filed on July 18, 1995. Less than one month later, debtor filed a written statement evidencing that debtor knew of the filing of the complaints. At that point, more than three months before the 120 days for service expired, plaintiffs' need for secrecy was gone because debtor knew of the complaints and was therefore free to make the argument plaintiffs wanted to avoid. More specifically, secrecy was no longer a reason to withhold service, and plaintiffs had more than 90 days remaining to effect proper, and timely, service. It should also be noted that once debtor learned of the filing of the adversary complaints, debtor at any time thereafter could have filed answers to the complaints, put the allegations before this Court, and added further to his argument against dismissal. In this Court's view, it was not good cause to attempt to hide the existence of the adversary proceedings to deprive debtor of an argument in opposition to the motion to dismiss. To hold otherwise would eviscerate the prompt service requirement of Rule 7004 by allowing secrecy for tactical reasons. But even if such a rationale were to constitute good cause, the support for that rationale was gone by August 10, 1995 and plaintiffs still had more than three months to make service within the time requirement of Rule 7004.

The plaintiffs also argue that Rule 7004's reliance on the 1990 version of FRCP 4(j) creates the anomalous situation that district courts have more discretion in applying federal rules than bankruptcy courts. As stated above, whether or not anomalous, this is the current state of the law. Furthermore, the bankruptcy courts and district courts do not always have the same policy goals. The bankruptcy court is interested in an expeditious resolution of claims to allow a debtor a fresh start. The more strict reading of the former FRCP 4(j) may simply reflect this bankruptcy policy, much like the short period of 60 days from the first date set for the meeting of creditors within which to file complaints objecting to the dischargeability of debts, as these complaints do.

■ Plaintiffs also contend that this Court should apply a 4–part test in interpreting whether the former FRCP 4(j) required a dismissal of the complaint that the Ninth Circuit developed in the *Borzeka* case. *Borzeka v. Heckler*, 739 F.2d 444 (9th Cir. 1984). This test suggests that dismissal is not required if (a) the party to be personally served received actual notice, (b) the defendant would not suffer prejudice, (c) there is a justifiable excuse for failure of proper service, and (d) the plaintiff would suffer severe prejudice by dismissal. *Id.* at 447; *see also In re Bloomingdale*, 137 B.R. 351, 354 (Bankr.C.D.Cal.1991). Plaintiffs contend that the 9th Circuit referred to the four-part test it had previously announced in *Borzeka* in determining whether the former FRCP 4(j) required dismissal in *Whale*. *Bloomingdale*, 137 B.R. at 354.

Plaintiffs claim that their actions satisfy this test and that dismissal is not warranted. They assert the debtor had actual notice of the complaints as of August 10, 1995. Plaintiffs further claim that extension will not prejudice debtor because he has all the evidence from the state court trial. Plaintiffs also claim their delay is justified due to their confidence that the case would be dismissed. Further, the non-dischargeability action could provide debtor a means to collaterally attack the state court judgment and attempt to relitigate. Therefore, plaintiffs believed that the motion to dismiss should be determined first. While plaintiffs had it within their power to serve, they believed that their motion to dismiss was supported by the evidence. Finally, plaintiffs claim that they would suffer severe prejudice because they would be prevented from re-filing their claim.

Plaintiffs have misconstrued the application of the *Borzeka* test in *Whale*. Both of these cases applied the test to circumstances of incomplete service under FRCP 4(d)(4) &

(5). These subdivisions of FRCP 4(d) govern service upon the United States as a defendant. The test mitigates the effect of the requirement that the U.S. Attorney be served personally. The former FRCP 4(j) as applied through Rule 7004 does not require personal service. In bankruptcy, service is effectuated through first class mail. Therefore, part (a) of this test does not apply.

The confusion surrounding the application of the *Borzeka* test seems to come from language in *Bloomingdale*. The plaintiffs appear to have misinterpreted that court's ruling. *Bloomingdale* does state that *Whale* referred to the four-part test in *Borzeka* in determining whether or not the former FRCP 4(j) required dismissal of the complaint. *Bloomingdale*, 137 B.R. at 354. In *Whale*, however, the court applied the test only to FRCP 4(d)(4), to determine if there was a justifiable excuse for the failure to personally serve the U.S. Attorney. If there was, the former FRCP 4(j) was not violated because the United States was served by certified mail within the 120–day period. The court in *Bloomingdale* applied the *Borzeka* test to determine if failure to serve debtor's attorney as required by Rule 7004(b)(9) was excusable. If it was, then service on the debtor within the 120–day period would have satisfied former FRCP 4(j). These cases, even *Bloomingdale*, dealt with incomplete service, not a complete lack of service and the four-part test of *Borzeka* was not used to directly analyze good cause under former FRCP 4(j). The cases applying this test all analyzed a specific technical failure, not a complete failure under former Rule 4(j). There is no authority that the four part test has any application to a situation where there has been no service.

The test may have been expanded too far in *Bloomingdale*. The language of the test seems to limit it to situations where there is a failure of personal service, such as FRCP 4(d)(4). Part one of the test states that the party that had to be served personally received actual notice. Since personal service is not required under former FRCP 4(j), or Rule 7004(b)(9), it probably should not have been used in that situation.

Because this test has no application to a good cause determination under former FRCP 4(j), plaintiffs' arguments regarding debtor's actual notice, lack of prejudice, plaintiffs' justifiable excuse, and plaintiffs' severe prejudice do not independently satisfy good cause under former FRCP 4(j). Once again, plaintiffs can cite to no support for the proposition that any of these factors constitutes good cause under former FRCP 4(j).

Plaintiffs claim that debtor had actual notice of the complaint and did not suffer any prejudice from the delay in filing. First, former FRCP 4(j) states that the defendant must be served within 120 day or the case shall be dismissed. This rule unambiguously requires service. Any other means of noticing the party to be served does not satisfy former FRCP 4(j). Also, plaintiff provides no authority for the proposition that a lack of prejudice to the defendant has any relevance to the determination of good cause under former FRCP 4(j). In fact, a lack of prejudice is not to be considered in determining good cause under former FRCP 4(j). *West Coast Theater Corporation v. City of Portland*, 897 F.2d 1519, 1529 (9th Cir.1990).

Finally, the plaintiffs assert that there is good cause to deny the motion to dismiss because they would be severely prejudiced. This is because the complaints are subject to Rule 4007(c), which limits the time to file non-dischargeability claims under 11 U.S.C. § 523(c) to 60 days. The sections affected by § 523(c) are §§ 523(a)(2), (4), (6), and (15). This would prevent plaintiffs from re-filing all but one of the causes of action listed in their complaints.[2] Thus, for practical purposes, any dismissal would be with prejudice to their claims and cause great hardship to plaintiffs. Congress balanced the possible hardship of dismissal without possibility of re-filing against the policy of moving cases promptly through the courts when it enacted former FRCP 4(j). *In re Van Meter*, 175 B.R. 64, 69 (Bankr.E.D.Cal.1994). Congress further balanced these policies in relation to bankruptcy when it enacted Rule 7004 to make FRCP 4(j) applicable in its 1990 form.

---

**2.** In Adversary Proceeding 95–90452, plaintiffs asserted a cause of action under § 523(a)(5).

This is not subject to the 60–day filing limitation.

Rule 7004 states that the case shall be dismissed if not served within 120 days if the party to provide service cannot show good cause *why such service was not made within that period.* The good cause must be connected with the failure to serve timely. The meaning of good cause is unaffected by the intervention of a time bar that will preclude refiling, notwithstanding that the dismissal is nominally without prejudice. *In re Reeves,* 127 B.R. 866, 869 (Bankr. S.D.Cal.1991); *citing In re Wilson,* 96 B.R. 301, 303 (Bankr.E.D.Cal.1989). Therefore, the inability to refile is not good cause under the 1990 version of FRCP 4(j). While this may seem harsh toward the plaintiffs, they are accountable to the acts of their attorneys. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 396–98, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993).

Plaintiffs' attorneys made a conscious and deliberate tactical decision not to serve the complaints, as they acknowledge. In their opposition, they do not assert that there was any mistake or neglect in their failure to serve. In fact, plaintiffs distinguish several cases cited by the debtor from plaintiffs' situation because those cases dealt with mistake or an inadvertent improper service. *See, e.g., Wei,* 763 F.2d at 372. This type of tactical decision is not good cause to violate the requirements of former FRCP 4(j). Further, plaintiffs never made any attempt to extend the deadline.

Cases that have found good cause for failure to serve within the 120–day period have focused on wrongful actions by the debtor. For instance, good cause was found where debtor's actions reasonably gave the plaintiff the impression that service had been made. *In re Hollis and Co.,* 86 B.R. 152 (Bankr. E.D.Ark.1988). As stated above, evasion of service is another instance of good cause. *Wei,* 763 F.2d 370. These cases suggest that good cause is only shown by a failure of plaintiff's ability to comply with former FRCP 4(j) that is beyond his or her control. Here, the plaintiffs made no attempt to serve debtor and there is no evidence that debtor engaged in conduct that prevented service.

Plaintiffs have not shown good cause for serving debtor beyond the 120–day time limit. Cases have been dismissed for lack of good cause where parties have made a much greater effort to serve. *See In re Waldner,* 183 B.R. 879 (9th Cir. BAP 1995). In this case, plaintiff made no effort to serve, notwithstanding a continuing ability to do so. Plaintiffs' assumptions, lack of prejudice to debtor, and prejudice to plaintiffs are not good cause for failure to comply with former FRCP 4(j). Plaintiff made a tactical decision that was not the result of neglect. Therefore, debtor's motions to dismiss are granted.

IT IS SO ORDERED.